**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT PERALES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. H-18-2224 |
| SFM, LLC d/b/a SPROUTS FARMERS | § | |
| MARKET, RON HAAS, and | § | |
| STEPHEN QUIROZ, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In May 2018, Robert Perales, representing himself, sued SFM, LLC, Ron Haas, and Stephen Quiroz in Texas state court, asserting a claim under the federal Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (Docket Entry No. 1-1). The defendants timely removed and, in July 2018, moved to dismiss and compel arbitration based on an agreement Perales signed. (Docket Entry Nos. 1, 3). Because Perales did not respond within the time to do so or appear at the August 2018 initial conference, the court granted the motion and dismissed Perales's claim based on the arbitration agreement. (Docket Entry Nos. 9, 10). In February 2019, the court granted Perales's motion to reinstate the case and directed him to respond to the defendants' motion to dismiss and compel arbitration. (Docket Entry Nos. 12, 13, 15, 16, 17, 18). Perales responded in June 2019, and the defendants replied. (Docket Entry Nos. 19, 20).

The record shows that Perales and the defendants signed an employment agreement on January 19, 2016. (Docket Entry No. 4-1 at 5; Docket Entry No. 19 at 4). The agreement contained a "Mandatory Arbitration" clause that reads: "Sprouts and Team Member agree that any claim, as that term is defined in Section 4 below, shall be submitted to final and binding arbitration

administered by JAMS in accordance with the then current JAMS Employment Arbitration Rules & Procedures." (Docket Entry No. 4-1 at 1, 3). Section 4, "Covered Claims," provides that the agreement "covers all [claims], whether based in contract, tort, equity, or other legal theory, and whether arising under any federal, state, or local statute, . . . arising out of or related to Team Member's employment with Sprouts and/or the termination thereof." (*Id.*). By signing the agreement, Perales confirmed that he:

> **(A) [HAD] READ EACH PROVISION OF THIS AGREEMENT CAREFULLY BEFORE SIGNING IT; (B) [HAD] SUFFICIENT OPPORTUNITY TO REVIEW THIS AGREEMENT WITH ANY ADVISOR WHICH [HE] MAY DESIRE TO CONSULT, INCLUDING LEGAL COUNSEL; (C) [HAD] SUFFICIENT OPPORTUNITY TO ASK ANY QUESTIONS [HE] HA[S] ABOUT THIS AGREEMENT AND ANY PROVISION CONTAINED IN IT; (D) AND UNDERSTAND[S] [HIS] RIGHTS AND OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING THAT THE AGREEMENT PROVIDES FOR FINAL AND BINDING ARBITRATION OF ALL CLAIMS ARISING OUT OF OR RELATED TO [HIS] EMPLOYMENT, INCLUDING TERMINATION.**

(*Id.* at 5).

Perales concedes that he signed the agreement. He argues that it is unconscionable because he was forced to sign it "under threat of termination," and because the defendants did not give him enough time to read the agreement before he signed it. (*Id.* at 4–5).

The Fifth Circuit "analyze[s] whether a party can be compelled to arbitrate using a two-step process." *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017). Applying "the contract law of the particular state that governs the agreement," *Wa. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004), the court first decides "if the party has agreed to arbitrate the dispute," *Janvey*, 847 F.3d at 240 (quoting *Sherer v. Green Tree Serv. L.L.C.*, 548 F.3d 379, 381 (5th Cir. 2008)). "If the party opposing arbitration has agreed to arbitrate," the court then decides "'if any federal statute or policy renders the claims nonarbitrable.'" *Id.* (quoting *Sherer,* 548 F.3d at 381).

Because Perales does not argue "that a federal statute or policy would bar arbitration here, the issue . . . is limited to the analysis's first step." *Sherer*, 548 F.3d at 381.

At step one, the court consider "two issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). Perales does not argue that his FMLA "claim falls outside the scope of the arbitration agreement." *Id.* He argues only that the agreement is invalid based on unconscionability.

The agreement does not specify which state law applies. (*See* Docket Entry No. 4-1). Because this "action was brought in a Texas federal court, . . . Texas choice-of-law rules apply." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016). Texas courts follow the most-significant-relationship test set forth in the *Restatement (Second) of Conflicts of Laws*. *See, e.g.*, *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735 (Tex. 1997). "'When, as here, the parties have not expressly chosen the applicable law, [the court] consider[s] . . . contacts' such as the place of contracting, negotiation, performance, and the location of the contract's subject matter." *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 365 n.14 (5th Cir. 2012) (quoting *Minn. Mining*, 953 S.W.2d at 735).

Perales, a Texas resident, worked for the defendants at a retail store in Texas. (Docket Entry No. 1-1 at 5; Docket Entry No. 4 at 1). The record also shows that the agreement was negotiated and signed in Texas. (Docket Entry No. 19 at 4). The relevant factors point to applying Texas law.

"Texas recognizes both substantive and procedural unconscionability." *Mattar v. BBVA Compass Bank, NA*, No. 13-16-496-CV, 2018 WL 2440382, at *5 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.). "Substantive unconscionability refers to the fairness of the agreement

itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the agreement." *Id.* Unconscionability "defies precise legal definition because it is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula." *Id.* (quotation omitted). "Depending on context, factors that may be considered include the commercial atmosphere in which the agreement was made, the alternatives available to the parties, the parties' ability to bargain, any illegality or public-policy concerns, and the agreement's oppressive or shocking nature." *Id.*

As the "party contesting the contractual arbitration provision," Perales "has the burden to show procedural unconscionability." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) (citing *Smith v. H.E. Butt Grocery Co.*, 18 S.W.3d 910, 912 (Tex. App.—Beaumont 2000, pet. denied). Perales fails to satisfy his burden because he offers only conclusory statements to support his position. *Id.* ("The Gaskamps have not met their burden here. The only evidence [they] have presented is in the form of their allegations of misrepresentations and pressure to sign the documents quickly. Such allegations are insufficient to establish unconscionability.").

The agreement is not unconscionable even if, as Perales asserts, he was required to sign the agreement as a condition of his continued employment. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) ("Because an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms.").

Perales also asserts that his supervisors did not give him enough time to read the agreement, making it unenforceable. In signing the agreement, Perales confirmed that he "had read each provision of the agreement carefully," (Docket Entry No. 4-1 at 5). And that allegation is

inadmissible parol evidence.  *In re H.E. Butt Grocery Co.*, 17 S.W.3d  360, 371 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  The agreement is not unconscionable.

The court finds that the parties' arbitration agreement is valid and enforceable.  The defendants' motion to dismiss and compel arbitration is granted.  (Docket Entry No. 3).  A dismissal order is separately entered.

SIGNED on July 16, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge